UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

PATRICK JOHN B.,[1]

                                        DECISION AND ORDER

                        Plaintiff,               1:19-CV-1209(JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

───────────────────────────────

         This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final

determination of the Commissioner of Social Security that plaintiff was not entitled to

Supplemental Security Income ("SSI") benefits. Before the court are the parties' cross-motions

for judgment on the pleadings [8, 11].[2] The parties have consented to my jurisdiction [13].

Having reviewed the parties' submissions [8, 11, 12], the action is remanded for further

proceedings.

## BACKGROUND

         The parties' familiarity with the 809-page administrative record [6] is presumed.[3]

In November 2015, plaintiff, who was then 52 years old, filed an application for SSI benefits,

---

[1]        In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff using only his first name and last
initial.

[2]        Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page
references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[3]         The Commissioner adopted plaintiff's statement of facts and procedural history (plaintiff's
Memorandum of Law [8-1], pp. 2-10), except for any inferences and conclusions, as do I.
Commissioner's Brief [11-1], p.2.

alleging a disability onset date of April 21, 2013 due to left eye blindness, anxiety, depression, tremors, and drug and alcohol addiction. Id., pp. 204, 241

The relevant medical opinions concerning plaintiff's mental limitations are as follows:

--      On December 17, 2015, consultative psychiatric examiner Janine Ippolito, Psy.D. opined that plaintiff suffered from unspecified obsessive compulsive related disorder and depressive disorder, but that he retained the capacity to "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and relate adequately with others with no evidence of limitations". She also found that that plaintiff could "make appropriate decisions with mild limitations", and "appropriately deal with stress with moderate limitations". Id., p. 530; and

--      On December 23, 2015, state agency review psychologist A. Dipeolu, Ph.D. opined that plaintiff's psychiatric impairments were non-severe. Id., p. 80.

Concerning plaintiff's physical limitations, plaintiff's treating Nurse Practitioner Mary Ellen Brown completed a functional assessment on September 20, 2016, which indicated that plaintiff had no walking, standing or sitting limitations, but had moderate limitations carrying/lifting, pushing, pulling, bending, using his hands climbing stairs, seeing, and hearing. Id., p. 691. At that time, she listed his medical conditions as alcohol abuse, "drug induced tremors", anemia, and "abnormal weight loss".  Id., p. 690.

After plaintiff's claim was initially denied, an administrative hearing was held on August 21, 2018 before Administrative Law Judge ("ALJ") Lisa Martin, at which plaintiff, who was represented by an attorney, and a vocational expert testified. Id., pp. 36-73.  On July 31,

2018, ALJ Martin issued a decision finding that plaintiff was not disabled. Id., pp. 20-31.  She determined that plaintiff's severe impairments were a cervical spine disorder, left eye blindness, essential tremors, depressive disorder, anxiety disorder with obsessive compulsive disorder, and a history of alcohol and marijuana dependence/abuse.  Id., p. 22.  ALJ Martin concluded that plaintiff had the residual functional capacity ("RFC") to perform "the full range of medium work", but with "limited to no full neck rotations left/right activities, no ladder, rope or scaffold climbing, no full field of vision tasks, frequent, but not constant, upper extremity handling and fingering tasks, and no exposure to dangerous work hazards". Id., p. 25.  ALJ Martin also found plaintiff limited to "routine, simple tasks not requiring a fast assembly quota pace, not requiring more than occasional work interactions with coworkers and supervisors, and not requiring any public contract work.  The claimant will be off-task up to three percent of the workday". Id.

In formulating that RFC, ALJ Martin gave "significant" weight to the medical opinions of Dr. Ippolito and Nurse Brown, but "little" weight to Dr. Dipeolu's opinion. Id., pp. 28-29.  With respect to plaintiff's cervical spine disorder, which she found to be a severe impairment, ALJ Martin explained, *inter alia*, that:

> "June 2018 cervical spine views did reveal spondylosis with some foraminal narrowing due to joint spurring . . . . However, objective examinations have revealed few abnormalities related to this impairment.  In April 2018, he reported having some neck pain for the few months . . . . However, on direct examination, he had a normal gait, intact range of motion in all extremities, and no musculoskeletal swelling or deformity with otherwise benign physical findings.  Prior treatment records typically document similar findings as related to the claimant's cervical spine impairment with no consistent findings of decreased extremity sensation, good coordination other than intermittent essential tremors, and good neck and extremity range of motion with a normal gait." Id., p. 26.

Based on the RFC, ALJ Martin concluded that although plaintiff was unable to perform his past relevant work, there were significant jobs in the national economy that he was

able to perform, and therefore was not disabled from September 19, 2015 though the date of her September 20, 2018 decision. Id., pp. 30-31.

   The Appeals Council denied plaintiff's request for review on July 11, 2019. Id., pp. 1-3. Thereafter, this action ensued.


## DISCUSSION

### A.  Standard of Review

   "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

   An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

   Plaintiff argues that ALJ Martin erred in formulating the RFC by relying on the stale opinions of Dr. Ippolito and Nurse Brown (plaintiff's Memorandum of Law [8-1], §C(1)) and by giving significant weight to Nurse Brown's opinion, which was inconsistent with the RFC. Id., §C(2).

**B.      Did ALJ Martin Impermissibly Rely on Stale Medical Evidence?**

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." Clute ex rel. McGuire v. Commissioner of Social Security, 2018 WL 6715361, *5 (W.D.N.Y. 2018).  However, "[t]he mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018); Cruz v. Commissioner of Social Security, 2018 WL 3628253, *6 (W.D.N.Y. 2018) (a "consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). *See also* Pritchett v. Berryhill, 2018 WL 3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes 'significant deterioration' after a consultative examination, the examination may not constitute substantial evidence"). "A medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically . . . after the opinion demonstrates substantially similar limitations and findings." Pritchett, 2018 WL 3045096, *8.

Plaintiff argues that both Dr. Ippolito and Nurse Brown's opinions were stale. Plaintiff's Memorandum of Law [8-1], §C(1).  Although plaintiff notes that Dr. Ippolito's consultative examination predated ALJ Martin's decision by more than two and a half years, he points to no deterioration in his condition that would render that opinion stale. As discussed above, "the mere passage of time" is insufficient to render an opinion stale.  Whitehurst, 2018 WL 3868721, *4.

Approximately two years elapsed between Nurse Brown's September 30, 2016 opinion and ALJ Martin's September 20, 2018 decision. Plaintiff first complained of neck pain on April 25, 2018, long after Nurse Brown's opinion.  Plaintiff also notes that Nurse Brown did

not have the benefit of his June 4, 2018 cervical x-ray, which showed C5-6 spondylosis, without

fracture, malalignment, instability or stenosis, and C6-7 foraminal narrowing due to joint

spurring when she rendered her opinion. [4], p. 792.

There is some evidence of degenerative changes in plaintiff's cervical spine after

Nurse Brown's opinion. *See* Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) ("[t]he

degenerative nature of [the] condition is an important factor to be weighed").  However, as the

Commissioner argues (Commissioner's Brief [11-1], p. 19), there was no evidence of any

cervical limitation (*e.g.*, no muscle weakness, decreased range of motion, or swelling) at

plaintiff's most recent April 25, 2018 examination. [4], p. 786. At that time, plaintiff complained

that his left eye blindness requires that he "turn[ ] around a lot to take a look at things", and that

he "sometimes gets paresthesias" from doing so. Id., p. 785.  ALJ Martin did not ignore those

limitations.  Instead, she her RFC included a limitation that plaintiff perform no full neck

rotation activities, and plaintiff points to no medical evidence that any greater limitation existed.

Id., p. 25. Therefore, I conclude that ALJ Martin's opinion was not based on stale evidence.


**C.    Was the RFC Consistent with the Significant Weight that ALJ Martin Assigned to Nurse Brown's Opinion?**

Plaintiff argues that although ALJ Martin gave significant weight to the opinion

of Nurse Brown, her opinion that plaintiff had moderate limitations in lifting/carrying, pushing,

pulling, bending, seeing, hearing was inconsistent with her determination that plaintiff had the

RFC to perform medium work.  Plaintiff's Memorandum of Law [8-1], §(C)(2).

"[T]here is no absolute bar to crediting only portions of medical source

opinions." Wethington v. Berryhill, 2017 WL 2129493, *3 (W.D.N.Y. 2017). However, the ALJ

"must address the totality of a medical opinion to which it assigns great weight". Cooley v.

Berryhill, 2017 WL 3236446, *12 (W.D.N.Y. 2017). "[A]t a minimum, the ALJ must explain

why a medical source opinion was not adopted in full where the ALJ's RFC assessment conflicts

with that opinion. Accordingly, an ALJ who chooses to adopt only portions of a medical opinion

must explain his or her decision to reject the remaining portions." Gonzalez v. Colvin, 2016 WL

5793425, *8 (W.D.N.Y. 2016); Searles v. Astrue, 2010 WL 2998676, *4 (W.D.N.Y. 2010).

That did not occur here.

> "[A] moderate limitation in exertional activities such as lifting, carrying, pushing,

and pulling is more consistent with an ability to perform light (rather than medium) work".

Kociuba v. Commissioner of Social Security, 2017 WL 2210511, *8 (N.D.N.Y. 2017); Bowers

v. Commissioner of Social Security, 2018 WL 582582, *5 (N.D.N.Y. 2018) (Dr. Lorensen's

opinion that  the plaintiff had moderate restrictions bending, lifting and reaching "was too vague

to support the conclusion that Plaintiff could perform the lifting and carry requirements of

medium work"). *See also* Scouten v. Colvin, 2016 WL 2640350, *4 (W.D.N.Y. 2016)

("moderate limitations . . . have often been found to be consistent with an RFC for a full range of

light work").[4]

> Therefore, Nurse Brown's opinion that plaintiff had moderate limitations in

lifting, carrying and carrying is inconsistent with ALJ Martin's determination that that plaintiff

had the RFC to fully perform those tasks to the level necessary for medium work.

Faced with that inconsistency, it was improper for ALJ Martin to "cherry pick" the portion of

Nurse Brown's opinion that supported her RFC while ignoring, without explanation, the portions

---

[4]     Medium work is defined by the regulations as involving "lifting no more than 50 pounds at a time
with frequent lifting or carrying of objects weighing up to 25 pounds".  20 C.F.R. §416.967(c). In
contrast, light work is defined by the regulations as involving "lifting no more than 20 pounds at a time
with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §416.967(b).  Frequent
means "occurring from one-third to two-thirds of the time." SSR 83–10, 1983 WL 31251, *6 (1983).

that did not. *See* <u>Royal v. Astrue</u>, 2012 WL 5449610, *6 (N.D.N.Y. 2012), <u>adopted</u>, 2012 WL

5438945 (N.D.N.Y. 2012) ("[i]n effect, [the] ALJ . . . 'cherry picked' the evidence, relying on

some statements to support his conclusion, while ignoring other substantive detail to the contrary

from the same sources. This, however, does not satisfy a substantial evidence standard. While

ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence

that supports a particular conclusion"); <u>Battease v. Commissioner of Social Security</u>, 2016 WL

3824146, *7 (N.D.N.Y. 2016) (finding error where the "the ALJ assigned 'great weight' to

'most' [of the doctor's the medical] opinions, and did not expressly discount their opinions that

plaintiff would need to alternate positions between sitting and standing approximately every half

hour", but failed to "impose any similar restriction in the RFC").

       The cases upon which the Commissioner relies upon are distinguishable. *See*

<u>Scholtisek v. Colvin</u>, 110 F. Supp. 3d 464, 477 (W.D.N.Y. 2015) (addressing "*a mild to*

*moderate limitation*" (emphasis added)); <u>Harrington v. Colvin</u>, 2015 WL 790756, *13

(W.D.N.Y. 2015) ("[t]he ALJ determined that Harrington could perform '*less than the full range*

*of medium work*'" (emphasis in original)). The Commissioner also points to plaintiff's own

statements and daily activities as supporting his ability to perform medium work.

Commissioner's Brief [11-1], pp. 19- 20. Even if ALJ Martin had drawn similar connections,

there remains an inconsistency between ALJ Martin's decision to give significant weight to

Nurse Brown's opinion and her RFC determination, which must be remedied on remand.


**CONCLUSION**

       For these reasons, plaintiff's motion for judgment on the pleadings [11] is granted

to the extent that this case is remanded to the Commissioner for further proceedings consistent

with this Decision and Order but is otherwise denied, and the Commissioner's motion [13] is

denied.

**SO ORDERED**.

Dated: December 30, 2020

_/s/ Jeremiah J. McCarthy_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge